UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANK OF AMERICA, N.A.,

                                  Plaintiff,

               -against-

BROOKLYN CARPET EXCHANGE, INC.;
MARK E. SIMON; and ROBERTA K. SIMON,

                                  Defendants.

15cv5981 (LGS) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

This breach-of-contract action is currently before this Court for a damages inquest following a default judgment entered in favor of plaintiff Bank of America, N.A. ("Plaintiff") against defendants Brooklyn Carpet Exchange, Inc. ("Brooklyn Carpet"), Mark E. Simon ("Mark"), and Roberta K. Simon ("Roberta") (collectively, "Defendants").  (*See* Dkt. 32.)  For the reasons set forth below, I recommend that, as against Brooklyn Carpet, Plaintiff be awarded $1,388,628.58 (representing $1,328,972.14 in outstanding principal, $28,512.68 in unpaid interest, $26,861.78 in attorneys' fees, and $4,281.98 in costs), plus additional interest calculated at the rate of $136.38 per day, from September 28, 2015, until the date of entry of a final judgment in this action.  I make no recommendation as to the damages to be awarded against defendants Mark and Roberta, given that, as set forth below, Plaintiff's claims against them are currently stayed as a result of these defendants' filing of a bankruptcy petition.

## BACKGROUND

### A.    Factual Background[1]

Plaintiff is a nationally chartered bank with its principal place of business in Charlotte, North Carolina.  (Compl. ¶ 3.)  Brooklyn Carpet, a New York corporation, operates a business at 7 West 36th Street, New York, New York 10016.  (*Id.* ¶ 4.)  Both Mark, Brooklyn Carpet's President and CEO, and Roberta, Brooklyn Carpet's Executive Vice President and Corporate Secretary, are New York residents.  (*Id.* ¶¶ 5, 6.)

On or about January 28, 2014, Plaintiff entered into a loan agreement (the "Loan Agreement") with Brooklyn Carpet, under which Plaintiff agreed to make available a revolving line of credit in the amount of $1.4 million until February 28, 2015 (the "Expiration Date"), at which time Brooklyn Carpet would repay all principal, interest, and other charges.  (*Id.* ¶ 8 & Ex. 1 (Loan Agreement, dated Jan. 28, 2014, ("Loan Agmt.") (Dkt. 1-1) ¶¶ 1.1-1.3).)  At the same time, Brooklyn Carpet also executed a security agreement (the "Security Agreement"), whereby Brooklyn Carpet granted Plaintiff a first priority security interest in all of its assets (collectively, the "Collateral"), whether in existence at the time of execution or thereafter acquired.  (Compl. ¶¶ 10-11 & Ex. 2 (Security Agreement, dated Jan. 28, 2014 ("Sec. Agmt.") (Dkt. 1-2) ¶¶ 1, 5(c)); *see also* Loan Agmt. ¶ 8.8.)

Both the Loan Agreement and the Security Agreement were signed by Mark and Roberta, in their capacities as officers of Brooklyn Carpet.  (Loan Agmt., at 14; Sec. Agmt., at 8.)  As

---

[1] The facts set forth herein are taken from Plaintiff's Complaint (*see* Complaint, dated July 29, 2015 ("Compl.") (Dkt. 1)) and Proposed Findings of Facts and Conclusions of Law (*see* Proposed Findings of Facts and Conclusions of Law, dated November 25, 2105 ("Proposed Findings") (Dkt. 37)), and the supporting documents and affidavits attached thereto.  All of Plaintiff's factual allegations are deemed to be true in light of Defendants' default.  *See, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

additional security, Mark and Roberta each also executed a personal guaranty (individually "M. Simon Guaranty" and "R. Simon Guaranty"; collectively the "Guaranties"), whereby both individuals absolutely and unconditionally guaranteed Brooklyn Carpet's obligations under the Loan Agreement.  (Compl. ¶¶ 12-14 & Ex. 3 (M. Simon Guaranty, dated Jan. 28, 2014 (Dkt. 1-3) ¶¶ 1, 5); Ex. 4 (R. Simon Guaranty, dated Jan. 28, 2014 (Dkt. 1-4) ¶¶ 1, 5).)

Although Brooklyn Carpet regularly made interest payments from March 1, 2014, until the Expiration Date (*see* Affidavit of Nanette Franco ("Franco"), sworn to Oct. 23, 2015 ("Franco Aff.") (Dkt. 28), Ex. A ("Payment Report")), it failed to repay the entire amount of the outstanding principal and interest at that time, as required under the Loan Agreement (*id*.; *see also* Compl. ¶¶ 16-18).[2]  On March 27, 2015, as a result of Brooklyn Carpet's failure to repay the entirety of the amount owed, Plaintiff, through its counsel, sent written notice of the default to Brooklyn Carpet, with duplicate copies to Mark and Roberta, advising Defendants that Brooklyn Carpet was in default of its obligations under the Loan Agreement and demanding immediate payment in full.  (Compl. ¶ 17 & Ex. 5 (Maturity Default Notice, dated Mar. 27, 2015 (Dkt. 1-5)).)  Despite the written notice and demand, none of the Defendants made the required payment to Plaintiff, instead sending only a partial principal repayment in the amount of $23,500.00, which was received by Plaintiff on April 21, 2015.  (Compl. ¶ 18; Payment Report, at 10.)

On June 22, 2014, Plaintiff's counsel sent a letter to Brooklyn Carpet ("Turnover Letter"), with a duplicate copy to Mark, advising that, in light of Brooklyn Carpet's continued default, it had elected to enforce its rights under the Security Agreement, and demanding the

---

[2] On March 10, 2015, subsequent to the Expiration Date, Brooklyn Carpet made an interest payment in the amount of $5,127.76.  (Payment Report, at 9.)

assembly and turnover of the Collateral by June 27, 2015.  (Compl. ¶ 19 & Ex. 6 (Turnover

Letter, dated June 22, 2015 (Dkt. 1-6)).)  Defendants took no action to comply with the Turnover

Letter, except that, on June 23, 2015, Brooklyn Carpet made another partial principal payment in

the amount of $18,142.63.  (Payment Report, at 12.)  After the commencement of this action,

Brooklyn Carpet made one final principal payment, on August 24, 2015, in the amount of

$25,708.05.  (*Id.*, at 13.)

## 1. <u>The Loan Agreement</u>

Under the terms of the Loan Agreement, Brooklyn Carpet was obligated to make monthly

interest payments pursuant to a fluctuating interest scheme, whereby the annual interest rate

would be the LIBOR Daily Floating Rate, as published by Reuters (or another commercially

available source selected by Plaintiff), plus three-and-a-half percent.  (Loan Agmt. ¶¶ 1.3, 1.5.)

The Loan Agreement expressly states that interest was to be calculated on the basis of a 360-day

year, despite the fact that this might yield a higher amount of interest than a calculation based on

a 365-day year.  (*Id.* ¶ 4.5.)  The first interest payment was due on March 1, 2014, and Brooklyn

Carpet was required to make interest payments on the first day of each month thereafter, until

full repayment of the outstanding principal.  (*Id.* ¶ 1.3(a).)  Any outstanding debt, whether

principal, interest, or other charge, was required to be repaid in full by the Expiration Date –

February 28, 2015.  (*Id.* ¶ 1.3(b).)  The Loan Agreement further provides that interest would

continue to accrue on any principal that remained unpaid after that date.  (*Id.* ¶ 4.5.)

The parties agreed that Plaintiff could declare Brooklyn Carpet in default and demand

immediate repayment of the debt if, *inter alia*:  (1) Brooklyn Carpet failed to make a payment

when due; (2) Brooklyn Carpet or its guarantor(s) defaulted on any other agreement they had

with Plaintiff or any of its affiliates; or (3) Brooklyn Carpet or its guarantor(s) filed a bankruptcy

petition.  (*Id.* ¶ 8.)  In the event of a default, Plaintiff also had the option to charge an additional

six percent interest, on top of the interest rate provided under the Loan Agreement, on any

amount still outstanding.  (*Id.* ¶ 4.6.)

      Moreover, the Loan Agreement provides that Brooklyn Carpet would be required to

reimburse Plaintiff for any reasonable attorneys' fees and costs incurred due to Plaintiff's

undertaking any action to enforce or preserve its rights under the Loan Agreement or any other

document executed in connection with the Loan Agreement.  (*Id.* ¶ 9.7.)  Brooklyn Carpet

further agreed to "indemnify and hold [Plaintiff] harmless from any loss, liability, damages,

judgments, and costs of any kind relating to or arising directly or indirectly out of . . . any

litigation or proceeding related to or arising out of [the Loan Agreement]," including attorneys'

fees.  (*Id.* ¶ 9.12.)  Finally, the Loan Agreement states that its interpretation was to be governed

by New York law.  (*Id.* ¶ 9.2.)

## 2.      The Security Agreement

      The Security Agreement grants Plaintiff a first priority security interest in all property

then owned and thereafter acquired by Brooklyn Carpet.  (Sec. Agmt. ¶¶ 1, 5(c).)  This Collateral

was intended to secure any and all indebtedness of Brooklyn Carpet to Plaintiff.  (*Id.* ¶ 2.)  Under

the Security Agreement, Brooklyn Carpet would be found to be in default if, *inter alia*:  (1) any

debt was not paid when due; (2) Brooklyn Carpet breached any term or provision under the

Security Agreement or other obligation it had to Plaintiff; or (3) Brooklyn Carpet or its

guarantors became insolvent, or admitted in writing their inability to pay their debts as they

became due.  (*Id.* ¶ 5.)  In the event of a default, Plaintiff could:  (1) declare any indebtedness

immediately due and payable, without notice and demand; (2) enforce the security interest

pursuant to the Uniform Commercial Code and any other applicable law; or (3) require Brooklyn

Carpet to assemble the Collateral and make it available at a place designated by Plaintiff.  (*Id.* ¶ 6.)  The parties also agreed that the Security Agreement would be governed by New York law. (*Id.* ¶ 7(d).)

**B.      Procedural History**

Plaintiff filed this action on July 30, 2015 (*see* Dkt. 1), asserting five claims against Brooklyn Carpet:  (1) breach of contract; (2) foreclosure of a security interest; (3) replevin; (4) conversion; and (5) unjust enrichment (*see* Compl. ¶¶ 21-47).  Plaintiff also asserted claims for breach of guaranty against Mark and Roberta.  (*See* Compl. ¶¶ 48-61.)  On August 7, 2015, Plaintiff served the Summons and Complaint on Defendants.  (*See* Affidavits of Service, sworn to Aug. 11, 2015 (Dkts. 12-14).)  On August 18, 2015, Plaintiff effected service on Brooklyn Carpet by delivering the Summons and Complaint to the New York State Secretary of State. (*See* Affidavit of Service, sworn to Aug. 18, 2015 (Dkt. 15).)  None of the Defendants have moved, answered, or otherwise responded to the Complaint.

On September 28, 2015, upon Plaintiff's request, the Clerk of Court issued certificates of default against all three Defendants.  (*See* Request to Enter Default, dated Sept. 25, 2015 (Dkt. 19); Clerk's Certificates of Default, dated Sept. 28, 2015 (Dkts. 21-23).)  By Order dated September 29, 2015, the Honorable Lorna G. Schofield, U.S.D.J., directed Defendants to show cause, at an October 27, 2015 conference, why a default judgment should not be entered against them.  (Order to Show Cause for Default Judgment, dated Sept. 29, 2015 (Dkt. 24).)  Defendants did not file any opposition to the Order to Show Cause and failed to appear for the conference scheduled for October 27, 2015.  (*See* Order of Default Judgment, dated Oct. 27, 2015 ("Default Judgment") (Dkt. 32).)  By Order dated October 27, 2015, Judge Schofield then entered a default judgment against all Defendants and referred the matter to this Court to conduct an inquest on

damages.  (*See* Default Judgment; Order of Reference to a Magistrate Judge, dated Oct. 27, 2015 (Dkt. 33).)

By Order dated October 30, 2015, this Court set a schedule for Plaintiff to submit proposed findings of fact and conclusions of law concerning its damages.  (*See* Dkt. 34.)  In particular, this Court directed Plaintiff to explain how it calculated any damages figures, to tie the proposed damages figures specifically to each legal claim on which liability had been established, and to support its claimed damages with an affidavit and documentary evidence. (*See id*.)  This Court also cautioned Defendants that, if they failed to respond to Plaintiff's submission or to contact the Court to request a hearing by December 30, 2015, then it would be this Court's intention to issue a report and recommendation on the basis of Plaintiff's written submission alone.  (*See id.*)

On November 19, 2015, Plaintiff filed a Notice of Suggestion of Bankruptcy, informing the Court that Mark and Roberta had filed a joint individual Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Southern District of New York.  (Notice of Suggestion of Bankruptcy, dated Nov. 19, 2015 (Dkt. 35).)  Plaintiff therefore agreed that it would withhold any further action against Mark and Roberta, unless and until the automatic stay imposed pursuant to 11 U.S.C. § 362(a) was lifted by the Bankruptcy Court.  (*Id.*)  On November 25, 2015, Plaintiff filed its Proposed Findings of Fact and Conclusions of Law, along with supplemental affidavits and supporting documentation.  (*See* Proposed Findings.)  To date, Brooklyn Carpet has not filed a response to any of Brooklyn Carpet's submissions, nor has it contacted the Court to request a hearing.

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

A. **Damages Following a Default Judgment**

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of Court must enter a default against a party who "has failed to plead or otherwise defend" an action. Fed. R. Civ. P. 55(a). Entry of default is a "judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011), and establishes "an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Although a "default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks and citation omitted), it does not reach the issue of damages, *see Ferri v. Berkowitz*, 561 F. App'x 64, 65 (2d Cir. 2014) (summary order) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). A plaintiff must therefore substantiate its claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (internal citation omitted). A plaintiff bears the burden to "introduce sufficient evidence to establish the amount of damages with reasonable certainty." *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013). Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal*

8

*Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default.  *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (adopting report and recommendation).

### B.   Breach of Contract

On this inquest, Plaintiff is only seeking contract damages against Brooklyn Carpet.  In order to prevail on a breach-of-contract claim under New York law, a plaintiff must establish four elements:  (1) the existence of a contract; (2) the plaintiff's performance of that contract; (3) the defendant's breach of that contract; and (4) that the plaintiff suffered damages as a result of the breach.  *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  It is a "fundamental principle" that an award of damages for breach of contract "should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citation omitted).  The parties, however, also have the right to "specify within a contract the damages to be paid in the event of a breach . . . when the liquidated amount is a reasonable measure of the anticipated probable harm, and the probable actual loss from a breach is difficult to estimate or ascertain at the time the contract is executed."  *Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (internal quotation marks and citations omitted).

New York law also provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract."  C.P.L.R. § 5001(a).  The applicable statutory interest rate in New York is nine percent per annum, *see id.* § 5004, and this statutory interest is generally "computed from the earliest ascertainable date the cause of action existed," *id.*

§ 5001(b).  If, however, "the contract provides a rate at which interest is to be calculated, then the contractual rate, rather than the statutory rate . . . , governs."  *Nuera Commc'ns, Inc. v. Telron Commc'ns USA, Inc.*, No. 00cv9167 (RMB) (FM), 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002).  In such cases, prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment.  *See NML Capital v. Republic of Argentina*, 621 F.3d 230, 240 (2d Cir. 2010); *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004); *see Nuera Commc'ns, Inc.*, 2002 WL 31778796, at *3 (calculating interest at the contract rate from date of breach until date of default judgment).

When the contract provides for an award of attorneys' fees to the prevailing party, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as the amounts are not unreasonable."  *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992).  In determining whether an attorney's hourly rate is reasonable, a court, "in exercising its considerable discretion, [must] bear in mind *all* of the case-specific variables" relevant to the reasonableness of attorneys' fees, as "[t]he reasonable hourly rate is the rate a paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  Where a court awards fees pursuant to a valid contractual provision, "it has broad discretion in doing so, and an award of such fees may be set aside only for abuse of discretion."  *U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks and citation omitted).

## II.     PLAINTIFF'S DAMAGES CLAIMS

### A.     Damages for Breach of the Loan Agreement

#### 1.     Unpaid Principal

Plaintiff seeks to recover $1,328,972.14 in damages for the unpaid principal due under the Loan Agreement.  (Proposed Findings ¶ 12.)  In support of this figure, Plaintiff submits the Payment Report (Franco Aff., Ex. A), which is attached as an exhibit to the Supplemental Affidavit of Franco, Plaintiff's Senior Vice President, and which Franco affirms was prepared in the normal course of Plaintiff's business (Franco Aff. ¶ 3).  The Payment Report shows that Brooklyn Carpet had borrowed $1,396,322.82 as of February 28, 2015, the Expiration Date. (Payment Report, at 9.)  After the Expiration Date, Brooklyn Carpet made three principal payments in the total amount of $67,350.68, leaving $1,328,972.14 in unpaid principal outstanding on September 28, 2015, the date of the entry of the default judgment.[3]  (*Id*., at 10, 11, 13-14 (showing principal payments of $23,500, $18,142.63, and $25,708.05, and a final outstanding principal amount of $1,328,972.14).)  Based on the information contained in the Payment Report, I recommend that the Court find that Plaintiff has established with reasonable certainty that it is entitled to $1,328,972.14 in outstanding principal.

#### 2.     Unpaid Interest From Date of Loan Agreement Through Entry of Default Judgment

Plaintiff also seeks to recover $28,512.68 in damages for the unpaid interest that accrued on the outstanding principal up until the date that the Court entered the default judgment against Brooklyn Carpet.  As set forth above, the Loan Agreement provides that the annual rate of

---

[3] In the Complaint, Plaintiff alleged that the unpaid principal amounted to $1,354,680.19 (Compl. ¶ 60-61), but Brooklyn Carpet made a final principal payment, in the amount of $25,708.05, after the initiation of this action.

interest on Brooklyn Carpet's loan was to be calculated at a fluctuating daily interest rate equal to the LIBOR Daily Floating Rate plus 3.5 percent, and based on a 360-day year. (*See* Background, *supra*, at Section A.1; *see also* Proposed Findings ¶ 11; Loan Agmt. ¶ 1.5.) This rate also applied to the accrual of interest on any principal that remained outstanding after the Expiration Date, until such principal was paid in full.  (Loan Agmt. ¶ 4.5.)  Further, in the event of a default, Plaintiff had the option to charge interest at a penalty rate that was six percent higher than that provided for by the Loan Agreement's stated methodology.  (*Id*. ¶ 4.6.)

The Payment Report details each fluctuation in the interest rate, the amount of interest that accrued between each rate change,[4] the amount of each interest payment made by Brooklyn Carpet, and the total amount of interest accrued on the principal at a given date.  (*See* Payment Report.)  This report demonstrates that, in total, $84,278.19 in interest accrued on the principal loaned to Brooklyn Carpet, and that Brooklyn Carpet repaid $55,765.51 of that amount.  (*Id*. at 14.)  By this report, Plaintiff has adequately supported its claim that the final amount of interest owed by Brooklyn Carpet as of September 28, 2015, the date upon which a default judgment was entered in this action, totaled $28,512.68.[5]  (*Id*.)  Accordingly, this Court recommends that Plaintiff be awarded $28,512.68 for the unpaid interest that accrued from the date of the Loan Agreement's execution until the date that the default judgment against Brooklyn Carpet was entered.

---

[4] Generally, because the applicable interest rate changed on each banking day, each entry under the column in the Payment Report labelled "Int Accr" contains the amount of interest that accrued during a single 24-hour period.  (*See* Payment Report.)  As the LIBOR Daily Floating Rate is calculated only on banking days, however, certain entries reflect the amount of interest that accrued over a weekend or over a holiday period of three or more days.  (*See id*.)

[5] Although Plaintiff was entitled to begin charging the higher penalty rate when Brooklyn Carpet defaulted on its obligations under the Loan Agreement, Plaintiff calculated the accrued interest based on the standard methodology for the duration of this period.  (*Id*.)

### 3. Unpaid Interest From Entry of Default Judgment Through Entry of Final Judgment

Plaintiff also requests an award of $136.38 per day, for the unpaid interest that has accrued or will accrue during the time between the entry of the default judgment against Brooklyn Carpet and the entry of a final judgment awarding damages.  (Proposed Findings ¶ 13.) Given that the Loan Agreement provides that interest was to accrue on the principal until all outstanding obligations under that contract were paid in full, Plaintiff has established that it is entitled to recover the interest that accrues on the principal up until the entry of a final judgment. (Loan Agmt. ¶ 4.5.)  As Plaintiff cannot, however, calculate the interest that will accrue up until some future date by using the Loan Agreement's stated methodology, Plaintiff's claim that it is owed $136.38 per day in accrued interest from the entry of a default judgment until the entry of a final judgment awarding damages is necessarily based on an estimate.[6]

To arrive at the figure of $136.38 per day, Plaintiff determined that the daily interest rates for the month of September 2015 (when the default judgment was entered), which fluctuated between a low of 3.6936 percent and a high of 3.716 percent, would result in a range of daily interest accrual from $136.38 to $137.18.  (Proposed Findings ¶ 13 n.10.)  This Court finds that selecting the low end of this range is a reasonable method for calculating the daily interest that has accrued or will accrue between September 28, 2015, and the date of the entry of a final judgment, particularly in light of the fact that this rate is substantially lower than the penalty rate

---

[6] Although Plaintiff could have used the Loan Agreement's methodology to calculate the interest that accrued between September 28, 2015, and November 25, 2015, the date that it filed its Proposed Findings, this Court accepts Plaintiff's estimate for this period of time, given that, as set forth below, this estimate almost certainly results in an amount of interest that is less than that provided for under the Loan Agreement, and Plaintiff was entitled to charge interest at a higher rate following Brooklyn Carpet's default.

that Plaintiff was entitled to charge in the event of a default.[7]  (Loan Agmt. ¶ 4.6.)  Accordingly, this Court recommends that Plaintiff be awarded damages representing unpaid interest at the rate of $136.38 per day, from September 28, 2015, until the date that a final judgment awarding damages is entered in this action.

    **B.**    **Attorneys' Fees and Costs**

Plaintiff also seeks compensation for $35,489.95 in attorneys' fees and costs.  Under the terms of the Loan Agreement, Brooklyn Carpet explicitly agreed to "pay any reasonable costs and attorneys' fees incurred by [Plaintiff] in connection with the enforcement or preservation of any rights or remedies under [the Loan Agreement]."  (Loan Agmt. ¶ 9.7; *see also id*. ¶ 9.12 (stating that Brooklyn Carpet agreed to indemnify Plaintiff for any loss arising out of litigation related to the Loan Agreement, and that this indemnity includes attorneys' fees).)  Further, the Loan Agreement provides that, in the event of a lawsuit between the parties to the contract, "the prevailing party is entitled to recover costs and reasonable attorneys' fees incurred in connection with the lawsuit."  (*Id*. ¶ 9.7.)  It is therefore clear that Plaintiff has a contractual right to recover any attorneys' fees and costs that it incurred in connection with this lawsuit or any other efforts to enforce its rights under the Loan Agreement, so long as such fees are reasonable.  *See Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13cv6562 (RJS), 2015 WL 4392081, at *7 (S.D.N.Y. July 15, 2015) (noting that, once court finds that fees are recoverable under contractual provision, court must still determine their reasonable amount).  For the reasons set

---

[7] The rate requested by Plaintiff is also lower than New York's statutory rate, which arguably applies here.  *See Nuera Commc'ns, Inc.*, 2002 WL 31778796, at *3 (finding that contract rate applied from date of breach until date of default judgment, after which time the debt merged into the judgment and the statutory rate applied).

forth below, I recommend that Plaintiff be awarded $26,861.78 in attorneys' fees and $4,281.98 in litigation costs.

### 1. Reasonableness of Requested Rates

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). There is generally a strong presumption that the lodestar represents the appropriate award, although courts have the discretion to enhance or reduce the lodestar in rare and exceptional circumstances. *See id.* at 166 (quoting *Perdue*, 559 U.S. at 554). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and the party's fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done," *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11; *see also Rosado v. City of New York*, No. 11cv4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case is brought."). Although the fee applicant has the burden of demonstrating prevailing market rates for

15

comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court

may also apply its "own knowledge" of rates charged in the community in assessing the

reasonableness of the rates sought, *Miele v. New York State Teamsters Conf. Pension & Ret.*

*Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  Paralegal services are includable in an award of

attorneys' fees, and the reasonableness of their fees is also determined by reference to the

prevailing hourly rate in the relevant community.  *See Marisol A. ex rel. Forbes v. Giuliani*,

111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274,

284 (1989); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415-16 (2d Cir.

1989)).  In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a

reasonable, paying client wishes to spend the minimum necessary to litigate the case

effectively."  *Id.*

Plaintiff is represented in this action by the law firm of Wilson, Elser, Moskowitz,

Edelman & Dicker LLP ("Wilson Elser").  In particular, Plaintiff seeks attorneys' fees for work

performed by four Wilson Elser attorneys and one paralegal:  senior partner Daniel F. Flores

("Flores"), a 1990 graduate of Rutgers School of Law, who billed at a rate of $300 per hour for

work performed before April 2015, and at a rate of $310 per hour for work performed from that

month forward; partner Marie Hofsdal ("Hofsdal"), a 2003 graduate of Rutgers School of Law,

who billed at a rate of $310 per hour; attorney Tana Bucca ("Bucca"), a 2002 graduate of Seton

Hall University School of Law and of counsel for Wilson Elser, who billed at a rate of $300 per

hour; attorney Timothy R. Wheeler ("Wheeler"), a 2002 graduate of Seton Hall University

School of Law and of counsel for Wilson Elser, who billed at a rate of $310 per hour; and

paralegal Helena Mills ("Mills"), who billed at a rate of $135 per hour.  (Proposed Findings,

Ex. D (Supplemental Declaration of Timothy R. Wheeler, Esq., for Judgment by Default ("Supp.

16

Wheeler Decl.") (Dkt. 37-15) ¶¶ 10-11); *see also* Supp. Wheeler Decl., Ex. A (Attorney Invoices) (Dkt. 37-16[8]).)

Although Wheeler affirms that the department to which these attorneys belong "specializes and devotes a substantial part of its legal practice to loan workouts, [as well as] lawsuits concerning and collection of debt obligations" (Wheeler Supp. Decl. ¶ 9), Wilson Elser provides no specific information, other than titles and law-school graduation years, regarding the level of relevant experience of the attorneys who worked on this case. Despite this lack of detail, this Court nevertheless recommends approval of counsel's requested rates, as each attorney had graduated from law school at least 12 years before commencing work on this matter, and the requested rates are well within the reasonable range of rates for experienced attorneys performing similar work. *See, e.g., Tabatznik v. Turner*, No. 14cv8135 (JFK), 2016 WL 1267792, at *11 (S.D.N.Y. Mar. 30, 2016) (approving partner rate of $650 per hour and associate rate of $425 per hour, in action to enforce a promissory note); *Rubenstein v. Advanced Equities, Inc.*, No. 13cv1502 (PGG), 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015) (finding that hourly rate of $525 was reasonable for partners with between 20 and 30 years' experience and that "blended" rate of $350 was reasonable for associates with experience ranging from one to nine years); *Cathay Bank v. Ho Seo*, No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *4 (S.D.N.Y. Dec. 16, 2009), *report and recommendation adopted as modified*, No. 06cv15445 (LTS) (RLE), 2010 WL 129681 (Jan. 13, 2010) (approving, in action for breach of guaranty agreement, hourly rates of $385 for partner and $350 for attorney of counsel). Indeed, one court

---

[8] The attorney invoices submitted as Exhibit A to the Supplemental Wheeler Declaration are misidentified on the Docket as Exhibit "D" to that Declaration. (*See* Dkt. 37-16.) These invoices will be correctly cited herein as "Supp. Wheeler Decl., Ex. A." The Court notes that the Supplemental Wheeler Declaration itself has been submitted as Exhibit D to Plaintiff's Proposed Findings. (See Dkt. 37-15.)

in this District recently approved rates for Flores, Hofsdal, and Bucca that are higher than those sought in this case.  *See Gulf Coast Bank & Trust Co. v. ASESD, LLC*, No. 11cv5023 (RMB) (RLE), 2014 WL 6850970, at *5-6 (S.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, No. 11cv5023 (RMB) (RLE), 2014 WL 6845410 (S.D.N.Y. Dec. 4, 2014) (approving hourly rates of $385 and $428 for Flores, $330, $341, and $355 for Hofsdal, and $330 for Bucca).

I further recommend, in light of the prevailing paralegal rates approved in this district, that Plaintiff be awarded fees for Mills' services at the requested rate of $135 per hour, as this is within the range of paralegal rates that have been approved in this District.  *See Rubenstein*, 2015 WL 585561, at *7 (reducing paralegal rate from $275 to $140 per hour); *Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, No. 12cv5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (approving $140 hourly rate for paralegal); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (approving $150 hourly rate for paralegals); *see also Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) (reducing paralegal rate from $150 per hour to $125 per hour, in action brought under Fair Labor Standards Act); *Microban Prod. Co. v. iSkin, Inc.*, No. 14cv5980 (RA) (DF) (S.D.N.Y. Feb. 23, 2016) (recommending hourly rate of $175 for paralegal with 17 years of experience, in trademark infringement case).

### 2.   Reasonableness of Stated Hours

In determining whether a reasonable amount of time was expended on a matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's

success, *see Hensley*, 461 U.S. at 436-37 (holding that there is "no precise rule or formula" for reducing a fee award and that courts have discretion to either eliminate specific hours or reduce the lodestar to account for limited success).  Other factors that a court should consider include "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved."  *Weiwei Gao v. Sidhu*, No. 11cv2711 (WHP) (JCF), 2013 WL 2896995, at *5 (S.D.N.Y. May 7, 2013), *report and recommendation adopted*, 2013 WL 2896995 (June 13, 2013).  Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (noting that the time component should not reflect hours that are duplicative or excessive).

In support of its application for fees, Plaintiff has provided contemporaneous time records detailing the time each attorney spent on each task for which fees are requested; in total, Plaintiff seeks fees for 106.7 hours of work, with 0.9 hours performed by a paralegal and 105.8 hours performed by attorneys.  (Wheeler Supp. Decl., Ex. A.)  These requested fees relate not only to hours expended in the prosecution of this lawsuit, but also to Wilson Elser's pre-litigation efforts to negotiate with Brooklyn Carpet and obtain satisfaction of the debt.  (*Id*.)  Plaintiff separates the work for which it seeks reimbursement into five categories:  (1) 16.3 hours reviewing loan documents, preparing a notice of default, and making an initial demand for payment or turnover of the Collateral; (2) 20.3 hours communicating with Brooklyn Carpet and its counsel about the default and negotiating possible forbearance terms; (3) 28.2 hours spent in the initial stages of this case, which included drafting the Complaint, preparing supporting

exhibits, and effecting service on Defendants; (4) 12.1 hours preparing the request for entry of a

default judgment; and (5) 29.8 hours drafting the Order to Show Cause and preparing related

documents and exhibits.  (Wheeler Supp. Decl. ¶ 11.)  Thus, the first two of these categories

cover 36.6 hours spent on pre-litigation work, while the final three categories encompass 70.1

hours expended in the litigation of this action.  (*Id.*)

  As an initial matter, this Court notes that Brooklyn Carpet agreed to reimburse Plaintiff

for the reasonable attorneys' fees and costs incurred in connection with any effort to enforce its

contract rights (Loan Agmt. ¶ 9.7), and Plaintiff is therefore entitled to recover fees for work that

preceded the commencement of this lawsuit, *see Sidley Holding Corp. v. Ruderman*,

No. 08cv2513 (WHP) (MHD), 2009 WL 6047187, at *18 (S.D.N.Y. Dec. 30, 2009), *report and

recommendation adopted*, 2010 WL 963416 (Mar. 15, 2010) (holding that contractual provision

for reimbursement of attorneys' fees obligated defendant to pay fees incurred in connection with

both federal litigation and related state court action); *Assured Guar. Corp. v. EMC Mortg., LLC*,

2013 WL 1442177, at *6 (finding that reimbursement provision gave plaintiff a contractual right

to recover fees incurred in the making of initial demands and in later litigation).  Having

reviewed Wilson Elser's contemporaneous time records, which are billed in tenth-hour

increments and specifically describe the work performed, this Court finds that the 36.6 hours the

firm billed for its pre-litigation efforts (the first two categories of work identified by Plaintiff) is

a reasonable amount of time to have expended on such work.

  With respect to the amount of time spent during the course of this litigation, however,

this Court finds that the time billed was at least somewhat excessive, given the nature and

posture of the case.  With respect to the initial stages of the litigation, counsel spent 28.2 hours

drafting a complaint that included straightforward claims, all of which arose from obligations

that were clearly defined in the Loan Agreement, Security Agreement, and Guaranties.  (*See* Compl. ¶¶ 21-61.)  While this amount of time for the preparation of a pleading might be understandable where it necessarily includes an investigation of the facts and document review and analysis, Plaintiff's counsel in this case had already expended a substantial amount of time in pre-litigation efforts to enforce the same obligations at issue in the suit.  Thus, by the time counsel began to draft the Complaint, they were presumably well familiar with the documents in question and with Defendants' history of default.  Moreover, the three attorneys who had a role in preparing the initial filings in this case (Flores, Hofsdal, and Wheeler) were all of a senior level (with 25, 13, and 12 years of experience, respectively), and thus they should have been able to prepare such papers efficiently.  Their combined time records, however, not only reflect numerous entries for preparing, reviewing, revising, further revising, and generally giving "attention" to a draft Complaint (*see, e.g.*, Supp. Wheeler Decl., Ex. A, at 21-23), but also several, separate entries for such basic work as preparing a civil cover sheet – a form that merely requires the checking of boxes (*see id.*, at 22-23 (Wheeler and Hofsdal time entries for: "[a]ttention to civil cover sheet . . .," "[a]ttention to civil cover sheet . . .," "[p]repare case information sheet . . .," "[f]inalize civil cover sheet . . .," "[f]inal revisions to civil cover sheet . . . ")), and even for submitting documents to the Court (*see, e.g.*, *id.*, at 23 ("[a]ttention to submission of complaint to SDNY . . ."), work generally performed by a junior associate or paralegal.

Further, when Defendants failed to appear to defend the action, Plaintiff's counsel had no further need to work on the case, other than to seek a ministerial entry of default by the Clerk of Court and to move for a default judgment.  Yet Wilson Elser continued to staff this case with senior attorneys, who collectively went on to bill another 41.9 hours to the matter.  (Wheeler

Supp. Decl. ¶ 11 & Ex. A.)  Plaintiff has not demonstrated a need for such top-heavy staffing, and, with respect to counsel's actual work on the default motion, many of their time entries are too vague to enable the Court to discern the reasonableness of the time spent on particular tasks. (*See, e.g.*, *id*., Ex. A, at 34-36 (Hofsdal entries for "[a]nalysis concerning entry of default and default judgment . . .," "[a]nalysis concerning entry of default . . .," "[a]nalysis concerning content of default judgment").)

Overall, not counting the pre-litigation work and the paralegal's stated time, the senior attorneys assigned to this case billed over 70 hours litigating an action in which no defendant ever appeared, no discovery ever commenced, and the only motion practice involved the unopposed application for a default judgment.  (*Id*.)  This amount of time is notably higher than the amounts found reasonable in other breach-of-contract cases in which a default judgment was entered, after the defendant failed to defend the action.  *See, e.g.*, *Merch. Cash & Capital LLC v. Edgewood Grp., LLC*, No. 14cv03497 (JGK) (DF), 2015 WL 4430643, at *13 (S.D.N.Y. July 2, 2015) (finding that request for fees for 13.3 hours, including a voluntary reduction from 15.1 hours billed, was reasonable in breach-of-contract action in which defendant never appeared), *report and recommendation adopted*, 2015 WL 4451057 (July 20, 2015); *Customers Bank v. Anmi, Inc.*, No. 11cv7992 (AJN) (DF), 2014 WL 842577, at *10 (S.D.N.Y. Jan. 8, 2014) (finding 20.6 hours to be reasonable in action arising from default on promissory note, where defendant initially answered the complaint, then failed to defend the action), *report and recommendation adopted*, 2014 WL 842577 (Mar. 3, 2014); *Diamant v. Dynasto Diamonds and Jewelry Group Corp.*, No. 04cv3844 (GBD) (DF), 2006 WL 728802, at *5 (S.D.N.Y. Feb. 14, 2006) (finding 18.91 hours spent on a breach-of-contract case in which a default was entered against defendant to be reasonable), *report and recommendation adopted*, 2006 WL 728802 (Mar. 20, 2006).

Plaintiff's submissions on this inquest contain no argument as to why this action was considerably more complex, or should have taken substantially more time to litigate, than a typical contract case in which the defendant defaults.

Finally, it seems evident that Wheeler, at least, did not separate out his travel time, as he billed 3.1 hours for attending a scheduled pre-trial hearing before Judge Schofield, at which Plaintiff presented its motion for a default judgment by order to show cause (*id*. at 39), and as it is unlikely that Judge Schofield conducted a hearing that lasted over three hours, when Defendants had failed to appear.  In fee awards in this district, travel time is generally only compensated at 50 percent of the attorney's reasonable billing rate.  *See Brig v. Port Auth. Trans Hudson*, No. 12cv5371 (RPP), 2014 WL 1318345, at *4 (S.D.N.Y. Mar. 28, 2014); *Davis v. City of New York*, No. 10cv699 (SAS), 2011 WL 4946243, at *6 (S.D.N.Y. Oct. 18, 2011).

Where billing entries are too vague to support the hours claimed or the requested number of hours is excessive, a court "may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted); *see also Kirsch,* 148 F.3d at 172 (upholding percentage reduction to fees because of vagueness of certain billing entries).  Here, the Court notes that Wilson Elser's invoices reflect that the firm discounted its fees, apparently as a client courtesy, by five percent.  (*See* Wheeler Supp. Decl., Ex. A.)  Yet, in light of the instances of vague or facially excessive billing in Wilson Elser's records, the uncomplicated nature of Plaintiff's claims, and the number of hours found to have been reasonably expended in similar cases, this Court recommends that Wilson Elser's requested hours for the final three categories of its work – that is, the three categories relating to the litigation of this action – be reduced by an additional

20 percent, for a total reduction of 25 percent with respect to that work.  Imposing this additional

percentage reduction would result in a total award of $26,861.78 in attorneys' fees, as shown

below:

| | Attorney/ Paralegal | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Category 1: Review loan documents and loan history, including lien searches and liens, and prepare notice of default and demand for payment and turnover of collateral securing mortgage | Flores | 0.8 | $300 | $240.00 |
| | Flores | 2.9 | $310 | $899.00 |
| | Hofsdal | 1.5 | $310 | $465.00 |
| | Bucca | 5.7 | $300 | $1,710.00 |
| | Wheeler | 4.5 | $310 | $1,395.00 |
| | Mills | 0.9 | $135 | $121.50 |
| Category 2:  Communicate with borrower and counsel concerning defaults and possible forbearance terms, in consultation with client | Flores | 0.4 | $300 | $120.00 |
| | Flores | 18.3 | $310 | $5,673.00 |
| | Wheeler | 1.6 | $310 | $496.00 |
| **SUBTOTAL ($11,119.50, less 5% reduction):  $10,563.53** | | | | |
| Category 3:  Commence foreclosure action; preparation of complaint and summonses and related supporting documents and exhibits; file and serve summonses and complaint | Flores | 5.6 | $310 | $1,736.00 |
| | Hofsdal | 1.9 | $310 | $589.00 |
| | Wheeler | 20.7 | $310 | $6,417.00 |
| Category 4:  Draft and revise request for entry of default against defendants; file and serve request for entry of default on all defendants | Flores | 1.6 | $310 | $496.00 |
| | Hofsdal | 1.3 | $310 | $403.00 |
| | Wheeler | 9.2 | $310 | $2,852.00 |

| Category 5: Draft and revise default judgment motion by way of order to show cause and related supporting documents and exhibits; make court appearance in connection with order to show cause; serve executed order to show cause with all supporting documents | Flores | 0.7 | $310 | $217.00 |
| | Hofsdal | 1.7 | $310 | $527.00 |
| | Wheeler | 27.4 | $310 | $8,494.00 |
| **SUBTOTAL ($21,731, less 25% reduction): $16,298.25** | | | | |
| **TOTAL ($10,563.53 + $16,298.25): $26,861.78** | | | | |

### 3.    Reasonable Litigation Costs

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d. Cir. 1998) (quoting *U.S. Football League*, 887 F.2d at 416); *see also Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). Here, Plaintiff seeks $4,281.98 in costs for shipping (via Federal Express), court fees, service of process, and litigation support services (including searches for corporate documents, outstanding judgments, and pending litigation) performed by Corporation Service Company ("CSC"). (Wheeler Supp. Decl., Ex. A, at 8, 14, 24-25, 31-32.)

Costs for shipping, filing fees, process servers, and litigation support are routinely recoverable. *See Home Loan Inv. Bank, F.S.B. v. Lemans Properties, LLC*, No. 11cv1107 (DRH) (AKT), 2012 WL 1020430, at *7 (E.D.N.Y. Mar. 2, 2012) (awarding costs for judgment and lien searches), *report and recommendation adopted*, 2012 WL 1019597 (Mar. 26, 2012); *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-CV-5412 (SJF) (VVP), 2007 WL 962036

25

(E.D.N.Y. Mar. 27, 2007) (reimbursing plaintiff for process servers and postage); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and Federal Express costs).  Although Wilson Elser has not substantiated the amount of these costs by providing the original invoices or receipts, it did document its accrued costs in its contemporaneously maintained billing records.  (*See* Wheeler Supp. Decl., Ex. A, at 8, 14, 24-25, 31-32.)  In addition, Wheeler submitted a declaration under penalty of perjury asserting that its litigation costs amount to $4,281.98.  (Supp. Wheeler Decl. ¶ 11.)  This Court therefore finds that Plaintiff has adequately supported its request for reimbursement of costs.  *See Abel v. Town Sports Int'l LLC*, No. 09cv10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012) (finding that declaration under penalty of perjury that certain amounts were expended on particular costs were sufficient).  Accordingly, this Court recommends that Plaintiff be awarded $4,281.98 in costs.

## CONCLUSION

For all of the foregoing reasons, I recommend that, as against Brooklyn Carpet, Plaintiff be awarded **$1,388,628.58** in total damages, representing:

1.   $1,328,972.14 in outstanding principal;

2.   $28,512.68 in unpaid interest;

3.   $26,861.78 in attorneys' fees; and

4.   $4,281.98 in costs.

I further recommend that Plaintiff be awarded additional interest on the outstanding principal, calculated at the rate of $136.38 per day, from September 28, 2015, until the date that a final judgment awarding damages is entered in this action.[9]

---

[9] Plaintiff's submissions on this inquest relate only to monetary damages, attorneys' fees, and costs, and do not address Plaintiff's claims that it is entitled to foreclose on its security

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States Courthouse, 40 Foley Square, Room 201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Schofield. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
    May 13, 2016

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:
All counsel (via ECF)

---

interest, take possession of the Collateral, and apply the proceeds of any sale of the Collateral to the monetary obligations of Brooklyn Carpet. (*See* Compl. ¶¶ 28-38.) Based on the well-pleaded allegations in the Complaint, however, it appears that Plaintiff is also entitled to an order granting it possession of the Collateral and authorizing it to sell the Collateral and credit the proceeds to Brooklyn Carpet's debt.